UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

                                   Case No. 13-20462

v.                                HON. LAWRENCE P. ZATKOFF

D-1   JASON NAJOR
D-2   JEFFREY NAJOR
D-3   WASSEEM SHAMOUN
D-4   AL KARANA
D-5   SUHAIL HALLAK
D-6   JOEY MURAD
D-7   PETER ALLEN (aka "KILLER")

        Defendants.

_____/

**OPINION AND ORDER**

AT A SESSION of said Court, held in the
United States Courthouse, in the City of Port Huron,
State of Michigan, on the 11TH day of June, 2014

PRESENT:   THE HONORABLE LAWRENCE P. ZATKOFF
                    UNITED STATES DISTRICT JUDGE

**I.  INTRODUCTION**

This matter is before the Court on several motions filed by various Defendants and

a Notice of Intent to Introduce a Summary Exhibit under Federal Rule of Evidence 1006

filed by the Government.  Specifically, the Court shall address:

    (1)     Defendant Jason Najor's Motion to Exclude Suicide Note (Docket #91);

(2)     Defendant Wasseem Shamoun's ("Shamoun") Motion to Dismiss Indictment (Docket #93);

(3)     Shamoun's Motion to Excluded Alleged Suicide Note (Docket #94);

(4)     Shamoun's Motion to Strike Surplusage from the Indictment (Docket #95);

(5)     Shamoun's Motion to Compel Pretrial Disclosure of Jencks Act and *Brady* Material, Witness and Exhibit Lists, and for Additional Discovery (Docket #96);

(6)     Shamoun's Motion to Sever Counts 22-24 from the Indictment (Docket #97);

(7)     Defendant Jeffrey Najor's Motion to Sever Counts 22, 23 and 24 from Counts 1 to 21 (Docket #100);

(8)     Defendant Suhail Hallak's ("Hallak") Motion for Production of Uncharged Conduct Evidence and for Summary Exhibits (Docket #118); and

(9)     Government's Notice of Intent to Introduce a Summary Exhibit under Federal Rule of Evidence 1006 (Docket #127).

The Government filed a response to each of the Defendants' motions,[1] and Shamoun filed a reply to the Government's response with respect to the motions listed at (4) and (5) above.   Shamoun also filed an objection to the Government's Notice of Intent to Introduce a Summary Exhibit.   The time for filing any other replies has expired.   The Court finds that the facts and legal arguments pertinent to the motions are adequately presented in the parties' papers, and the decision process will not be aided by oral arguments.   Therefore, pursuant to E.D. Mich. Local R. 7.1(f)(2), it is hereby ORDERED

---

[1]As to each motion filed by a Defendant, a notice of joinder in said motion was filed by one or more other Defendants.

that the motion be resolved on the briefs submitted by the parties, without this Court entertaining oral arguments.

## II.  BACKGROUND

The Government alleges that, from January 2006 through December 2008, the Defendants engaged in a pervasive bank fraud conspiracy to sell a number of previously-acquired residential properties in the City of Detroit to "straw buyers" the Defendants had recruited.  In Count 1 of the Indictment, the Government charges all seven Defendants with conspiracy to commit bank fraud, in violation of 18 U.S.C. 1349, based on 63 transactions the Defendants conducted.  In each of Counts 2-21 of the Indictment, the Government charges one or more Defendants with bank fraud with respect to 20 of those 63 transactions. According to the Government's filings in conjunction with Defendants' motions and the Government's Notice of Intent to Introduce a Summary Exhibit, the Government currently calculates that the victim lending institutions incurred approximately $6,010,940 in losses as a result of the conduct alleged in Count 1 of the Indictment.

## III.  ANALYSIS

### A.     Alleged Suicide Note (Docket #s 91 and 94)

On October 1, 2012, Government agents interviewed David Gilfman ("Gilfman"), a mortgage broker alleged to have been involved in the sale of some of the properties

referenced in the indictment. In that interview, Gilfman allegedly stated that he knew

Jeffrey Najor and that he assisted a number of Jeffrey Najor's buyers in obtaining loans.

Gilfman further stated that he would either meet with the prospective buyer in person or

talk to him/her on the phone to ensure that the buyer would qualify for the mortgage.

Gilfman allegedly denied that he received any money from Jeffrey Najor or any of Jeffrey

Najor's associates in return for assisting the buyers in obtaining loans. He stated that the

only money he received for processing the loans was the normal fee from the bank. He

further stated that, although he would call someone at the bank to see what needed to be

on the loan application, he never knowingly submitted a fraudulent loan application to a

lender.  Less than a month later, Gilfman committed suicide. At some time prior to his

death, he purportedly left a typewritten note (the "Note") to his wife that reads as follows:

> Heather, if your [sic] reading this letter then I'm probably dead.

> Let me try to explain. I really messed up this time a few months ago
> I found out that the FBI was going after the [sic] those guys I used to
> do loans for, they implicated me in everything, which put me on the
> FBI list for conspiracy. I have met with the FBI and consulted with
> two [lawyers]. In a nut shell my life is over I am looking at serving
> many years in prison and paying huge amounts in restitution. Even if
> I co-operated with them fully I may get some type of reduction but
> who knows, I would also need to testify against them, which could
> put you and the kids in danger and I could not live with that.

> If I some how get thru this and get out and who knows when and if, I
> will have nothing to live for I would have lost you and the kids, I
> would never be able to get a normal job, I would die alone and in
> poverty.

> You have been the best wife and friend that I could have asked for
> and I have done nothing but let you down. I can't live with you and

the kids having to go thru this ordeal for the next 10 years or so.

I am so sorry I will always love. David

There should be enough money in my account to take care of the auto insurance.

The Government has informed the Defendants that it intends to introduce the Note into evidence at trial.

In its brief, the Government states that it "seeks to admit Gilfman's Note primarily as an admission by Gilfman that he was involved in a conspiracy to commit bank fraud through the submission of fraudulent loan applications." Jason Najor asserts that the Note is hearsay and does not qualify under any of the exceptions in Federal Rules of Evidence 803 or 804. The Government asserts that the Note is a non-hearsay statement of a co-conspirator or an admission, admissible under Federal Rules of Evidence 801(d)(2)(E) and 801(d)(2)(A), respectively.

The Court finds that the Note itself is not relevant under Federal Rules of Evidence 401, as Gilfman's only "admission" in the Note was that he did loans for some guys "the FBI [is] going after." Contrary to the arguments and suggestions in the Government's response, nothing set forth in the Note: (1) "constitutes an admission by Gilfman of his involvement in th[e] scheme," and (2) indicates "that the preparation of th[e] loans was part of a conspiracy." Further, the Court finds that Gilfman's "reference to the FBI, going to jail, and 'paying huge amounts of restitution,'" does not suggest "that Gilfman was cognizant of his own guilt." Thus, the Court finds that the Note is full of statements

5

about what others did, said or believed.  For example, "they implicated me in everything, which put me on the FBI list for conspiracy" does not constitute an admission; it is instead a statement that others (perhaps the FBI, perhaps other Defendants, perhaps third parties) suggested that Gilfman was a participant in some conspiracy.  It also reflects that it is "the FBI['s] list for conspiracy," which does not constitute an admission by Gilfman. Then, Gilfman says that he met with the FBI and two lawyers and, as a result, he believed he was "looking at serving many years in prison and paying huge amounts of restitution." But, such statements are not admissions or recognition of guilt; rather, they reflect his belief of the consequences he faced if found guilty of the conspiracy charges the FBI talked to him about.  At no point does Gilfman admit to any wrongful acts; again, the only thing he admits to was the preparation of loans for "those guys I used to do loans for."

The Court also finds that, even if relevant, the Note would be hearsay, as it is a statement made outside of the trial and the Government is offering it to prove the truth of the matter asserted therein, *i.e.*, that Gilfman "was involved in a conspiracy to commit bank fraud through the submission of fraudulent mortgage loan applications."  The Court is not persuaded by Government's arguments that the Note is not hearsay under Federal Rules of Evidence 801(d)(2)(A) and (E).  Rule 801(d)(2)(A) provides that out of court statements are not hearsay if they are "offered against an opposing party" and "made by the party in an individual capacity."  Gilfman, however, is not a party to this action.  As such, Rule 801(d)(2)(A) is not applicable to the Note.  Likewise, Rule 801(d)(2)(E) does

not apply to the Note because although the argument could be made that Gilfman was a co-conspirator, the statements in the Note were not made "during and in furtherance of the conspiracy." The statements in the Note were made in 2012, more than three years after the alleged fraudulent mortgage transactions were conducted.

Finally, even if the Note is relevant and admissible as non-hearsay, the Court finds that the probative value of the Note is substantially outweighed by the chance of unfair prejudice and, therefore, inadmissible pursuant to Federal Rule of Evidence 403. The only probative value the Note has is to show that Gilfman prepared loans for some people, *i.e.*, "those guys." The Note does not, however, identify who "those guys" are, and no Defendant is identified in the Note in any manner. Thus, the probative value of the Note is minimal. The prejudicial effect of the Note, however, is substantial. This is not simply the Government eliciting testimony that Gilfman is dead – or that he committed suicide. Rather, the Note would inescapably tie Gilfman's suicide to the alleged charges in this case and suggest his guilt in the same, even though Gilfman does not ever admit guilt or specify that he or anyone else did anything wrong. In fact, in its response, the Government has already made clear that it would argue that the Note demonstrates that Gilfman was admitting guilt to the conspiracy charges. For these reasons, the Court finds that the probative value of admitting the Note is substantially outweighed by the danger of unfair prejudice.

Accordingly, the Court grants Jason Najor's motion to exclude the Note.[2]

**B.     Motion to Dismiss Indictment (Docket #93)**

Shamoun contends that the Indictment should be dismissed because it was not filed until 68 months after the last charged bank fraud and 54 months after the alleged conspiracy ended.  Shamoun argues that such delay was unreasonable and unjustified, thereby violating his due process rights under the Fifth Amendment to the United States Constitution.  He argues that his right to a fair trial has been substantially prejudiced due to "diminished memories, lost witnesses[,] and destroyed, lost or otherwise unavailable records and documents necessary to the defense."

To prevail in establishing a violation of the Due Process Clause of the Fifth Amendment, a defendant must show: (1) actual and non-speculative prejudice resulting from the pre-indictment delay; and (2) that, when considering the proffered explanation for the delay, the delay offends "those fundamental conceptions of justice which lie at the base of our civic and political institutions." *United States v. Lovasco*, 431 U.S. 783, 788-790 (1977); *see also United States v. MacDonald*, 456 U.S. 1 (1982).  Further, the Sixth Circuit has since held that a defendant must establish the following two criteria to prevail on a motion to dismiss for pre-indictment delay: (a) substantial prejudice due to a delay that negatively affects the defendant's right to a fair trial; and (b) that the Government intentionally caused the delay in order to obtain a tactical advantage at trial. *United States*

---

[2]As the Court has granted Jason Najor's motion to exclude the Note, the Court need not and does not address Shamoun's motion to exclude the Note.  Shamoun's motion to exclude the Note is therefore denied without prejudice.

*v. Wright*, 343 F.3d 849, 859 (6th Cir. 2003).  Finally, there must be a showing by the defendant that evidence was lost and that the loss of that evidence was harmful to the defense. *See United States v. Rogers*, 118 F.3d 466, 475 (6th Cir. 1997).

Shamoun's motion to dismiss the Indictment lacks any showing of "actual and non-speculative prejudice resulting from the preindictment delay."  Shamoun does not identify any witness whose memory may be diminished, any witness who has been "lost," or any record or document that has been "destroyed, lost or [is] otherwise unavailable." He does not offer any specifics or explanation of how the delay will negatively affect his right to a fair trial, nor does he offer any specifics or explanation that the Government intentionally delayed filing the indictment or how or why the Government would obtain a tactical advantage at trial. In fact, Shamoun does nothing more than offer conclusory allegations that the delay will result in prejudice to the defense.  Therefore, the Court cannot conclude that the delay offends "those fundamental conceptions of justice which lie at the base of our civic and political institutions."

Accordingly, the Court denies Shamoun's motion to dismiss the Indictment.

## C.      Strike Surplusage from the Indictment (Docket #95)

Pursuant to Federal Rule of Criminal Procedure 7(d), Shamoun asks the Court to strike from the Indictment as irrelevant and prejudicial surplusage: (1) loss amounts of $10 million (¶16) and $6,536,380 (¶¶150-151), and (2) references to co-Defendant Peter Allen as "Killer" (Caption and ¶¶9, 11-21, 54, 59, 13, 150).

Rule 7(c) provides that "[t]he indictment or information must be a plain, concise,

9

and definite written statement of the essential facts constituting the offense charged..."
Pursuant to Rule 7(d), the Court may strike surplusage from the indictment upon motion
of a defendant.  In the Sixth Circuit, "the striking of surplusage [pursuant to Rule 7(d) is]
permissive but not mandatory.  The Rule is properly invoked when an indictment contains
nonessential allegations that could prejudicially impress the jurors." *United States v.
Kemper*, 503 F.2d 327, 329 (6th Cir. 1974).  Thus, "[t]he decision whether to strike
language from an indictment rests within the sound discretion of the district court."
*United States v. Emuegbunam*, 268 F.3d 377, 394 (6th Cir. 2001) (noting the use of an
alias in the indictment is appropriate when proof of the alias is relevant to identifying the
defendant or is necessary to connect the defendant to the acts charged).

      1.    *Dollar Amounts*

In Paragraph 16, the Government alleges that, "[i]n total, the Defendants caused
Straw Buyers to apply for and receive approximately $10 million in fraudulent mortgage
loans from financial institutions."   In conjunction with the allegations pertaining to
"Criminal Forfeiture" in Paragraphs 150-151, the Government seeks a money judgment
"[a]t least in the amount of $6,536,380" related to "proceeds obtained, directly or
indirectly, as a result of the offense of Conspiracy to Commit Bank Fraud[.]" Shamoun
argues that there is no support for these high numbers, as the sums in the substantive
amounts contained in the Bank Fraud counts (2-21) total approximately $2.1 million.

The Government responds that the Sixth Circuit has held that, if the indictment
contains information the Government hopes to prove is legally relevant at trial, "it cannot

be considered surplusage no matter how prejudicial it may be." *United States v. Thomas*, 875 F.2d 559, 562 n.2 (6th Cir. 1989) (citation omitted); *United States v. Moss*, 9 F.3d 543, 550 (6th Cir. 1993) (citation omitted).   Although the Government's response indicates that the dollar amounts in the Indictment are not surplusage, its arguments are inconsistent, especially with respect to what the Government hopes to prove at trial.   The Government first notes that the Indictment states that the lending financial institutions suffered aggregate losses of approximately $10 million, but it then states that it has notified Defendants and the Court that the "refined and revised aggregate loss amount . . . [is] $6,010,940."   The Government's response also indicates that it "will introduce evidence at trial to show the Defendants received a specific sum of money, approximately $6,536,380, as a result of their scheme."

Based on the foregoing, especially the Government's recent notification that the amount of loss to lending financial institutions it intends to prove is approximately $6 million, the Court cannot see how the Government "hopes to prove at trial" that the lending financial institutions lost $10 million, as the Government alleges at Paragraph 16 of the Indictment.   Similarly, although the amount of $6,536,380 in the Criminal Forfeiture section of the Indictment is much closer to the $6,010,940 amount, the Government's response gives no indication that it intends to prove that the Defendants obtained proceeds in an amount greater than the amount of the loss to the lending financial institutions.   Moreover, as discussed in Section G below, the Government may be limited to offering evidence at trial pertaining to the charges it has filed against the

Defendants in Counts 2-21 – *i.e.*, 20 properties, not all 63 properties upon which the Government has based its loss figure of $6,010,940.  Accordingly, the Court orders that all references to alleged loss amounts of "approximately $10 Million in fraudulent mortgage loans from financial institutions" and "$6,536,380" as the alleged amount of loss in the Criminal Forfeiture section be stricken.

     2.     *Alias of Peter Allen*

The Government includes a reference to Defendant Peter Allen ("Allen") as "Killer" throughout the Indictment, including in the caption, Counts 1 and 15-16, and the Criminal Forfeiture section.  Allen has pled guilty; therefore, he will not be on trial in the event this case proceeds to trial.  It seems likely, however, that he will be discussed and/or be a witness at trial.  The Government maintains that some witnesses, including "Straw Buyer E," do not know Allen by his legal name but only by the name "Killer."  The use of the alias, the Government maintains, is evidence that Allen knew he was acting illegally.

The Sixth Circuit generally disfavors the inclusion of aliases in Indictments, however, "when proof of an alias is relevant to identifying the defendant, . . . the court should allow its inclusion in the indictment and its subsequent introduction at trial." *United States v. Wilkerson*, 456 F.2d 57, 59 (6th Cir. 1972).  The Sixth Circuit has also held that a defendant's use of an alias may be relevant to show consciousness of guilt. *United States v. Okayfor*, 996 F.2d 116, 120 (6th Cir. 1993)(citation omitted).

Shamoun argues that including the alias "Killer" in the Indictment is irrelevant,

inflammatory and prejudicial.  Shamoun also argues that even if the alias "Killer" is relevant to establishing Allen's identity at trial, there are other, non-objectionable ways to show identity.  Finally, Shamoun contends that, even if the alias is relevant as it relates to Allen, including the alias in the Indictment is prejudicial to Shamoun and the other Defendants.

The Court agrees that the use of "Killer" in the Indictment is unnecessary and surplusage in this case.  First, Allen has already pled guilty and will not be a Defendant at trial, if there is one.  Second, even if "Straw Buyer E" knows Allen only as "Killer," whether the Indictment indicates (or does not indicate) that Allen is also known as "Killer," the Government will have to establish at trial that Allen used the alias "Killer" in conjunction with the alleged fraudulent transaction(s) in this case.  If the Government is able to introduce evidence that establishes that Allen was also known as "Killer," the Government may be able to argue that use of the alias shows consciousness of guilt.  To permit the jury to think that Allen is "Killer" because the Indictment says so (and, including "Killer" in the caption indicates that the alias has been established as a fact rather than an allegation), however, without proof that Allen used "Killer" as an alias, would be prejudicial and inflammatory in this case of real estate fraud.

Accordingly, the Court will order that all uses of the word "Killer" be stricken from the Indictment as surplusage.

### 3.    Conclusion

For the reasons set forth above, Shamoun's motion to strike surplusage is granted.

**D.      Jencks Act, *Brady* Material, Etc. (Docket #96)**

Shamoun's motion includes extensive discovery requests, including pretrial disclosure of: (1) Jencks Act and *Brady* material, (2) witness and exhibit lists, and (3) additional discovery under *Brady v. Maryland*, *Giglio v. United States*, and Fed.R.Crim.P. 16(a). Specifically, Shamoun makes the requests set forth below at enumerated sections 1-19. Generally, the Government indicates that: (a) it is aware of its obligations under *Brady, Giglio*, and Rule 16(a), and (b) it has and will provide evidence as required thereunder. The Government represents that, on October 25, 2013, it provided the Defendants with copies of the bank record and mortgage application evidence relevant to this matter, including copies of all the appraisal evidence gathered in Government's investigation that the Government had its possession. The Court now separately addresses each of Shamoun's 19 requests.

**1.      Any material subject to the Jencks Act (18 U.S.C. §3500 *et seq.*) requirements including grand jury testimony or any documents produced by all witnesses at the grand jury.**

The Government states that it provided these materials to the Defendants prior to the filing of this motion, but Shamoun counters that the Government has filed additional materials since he filed this motion and that the Government has recently communicated that "[a]dditional discovery will be provided by the Government on an ongoing basis." The Court therefore Orders that, to the extent the Government has not done so, the Government shall provide the Defendants with any and all Jencks Act materials: (a) of which the Government is currently aware within 7 days of the date of this Opinion and

Order, and (b) to the extent the Government becomes aware of any additional Jencks Act materials, immediately upon becoming known to the Government.

**2.      Government witness and exhibit lists that the Government intends to use, call and/or introduce at trial (two weeks prior to trial).**

The Government represents that it will submit a witness list and exhibit list at least two weeks prior to trial.  The Court therefore denies Shamoun's request at this time.

**3.      Handwritten notes from interviews of all who will testify.**

The Government represents that: (a) it will retain copies of existing handwritten notes in its possession regarding witness interviews from anticipated trial witnesses, and (b) it has already provided the Defendants with copies of grand jury transcripts and interview memoranda from anticipated trial witnesses.  The Government also represents that it will "provide Defendants with relevant handwritten notes if they contain evidence not found in the interview memoranda already provided." Shamoun asks to inspect the handwritten notes to compare them to the interview memoranda to ensure there is complete accuracy.  Shamoun does not, however, give any reason to believe that the interview memoranda do not accurately reflect the handwritten notes or how he will be prejudiced absent a review of all the handwritten notes.  Based on the foregoing, the Court shall deny Shamoun's request for all handwritten notes, but to the extent that the handwritten notes contain evidence not found in the interview memoranda, the Court Orders the Government to provide the Defendants with such handwritten notes at least 30 days prior to trial.

**4.      Any recorded statements of interviews from Shamoun or any other Defendant in this case.**

The Government represents that it is unaware of the existence of recorded statements for any interviews of the Defendants relevant in this case. As such, the Court denies Shamoun's request for recorded statements from the Defendants' interviews.

**5.      Any handwritten notes of agent (FBI, IRS, and/or other Government Agency) interviews with Defendants.**

For the reasons set forth in Paragraph 3 above, the Court: (a) denies Shamoun's request for all handwritten notes, and (b) Orders that, at least 30 days prior to trial, the Government must provide the Defendants with any handwritten notes that contain evidence not found in the interview memoranda.

**6.      Any potential or alleged co-conspirator statements which the Government may seek to introduce under Federal Rule of Evidence 801(d)(2)(E), including those of any potential unindicted alleged coconspirators.**

The Government represents that it has provided the Defendants with evidence of co-conspirator statements it intends to introduce at trial pursuant to Federal Rule of Evidence 801(d)(2)(E), a representation that Shamoun has not challenged. The Court therefore denies this request as moot.

**7.      Notice of Intent to use any Fed.R.Evid. 404(a)-(b) or Fed.R.Evid. 608 or Fed.R.Evid. 609 material, and the material upon which that notice is based, which the Government intends to introduce at trial.**

The Government represents that it has provided the Defendants with the "underlying evidence the Government would attempt to use for" purposes of 404(a), 404(b), 608 or 609. In his reply, Shamoun asks the Government to specify what the

16

Government has provided to Defendants that would be used for such purposes.   The Government also represents that it will provide the Defendants with notice of its intent to introduce such evidence (character, other bad acts, untruthfulness or impeachment by criminal conviction) should any Defendant(s) elect to testify at trial.   In his reply, Shamoun asks when and how the Government would provide such evidence in light of Federal Rule of Evidence 404(b)(2).   Based on the foregoing, the Court Orders the Government to: (1) within 30 days of the date of this Opinion and Order, specify to the Defendants what "underlying evidence" the Government has provided that the Government might attempt to use for the purposes discussed in this paragraph, and (2) at least two weeks prior to trial, provide the Defendants with any Rule 404(b)(2) evidence it intends to use at trial.

> **8.     Any proposed expert reports and/or summaries of expected testimony and *curricula vitae* for Government experts who will be testifying at trial.**

The Government represents that it has provided the Defendants with notice of its intent to introduce summary evidence pursuant to Rules of Evidence 1006 (and 611(a)), together with a summary chart to be used as an exhibit and the *curricula vitae* of the Government witness it intends to call as the summary witness.   Shamoun indicates that the Government has not provided a written summary of the summary witness's proposed testimony, as required by Federal Rule of Criminal Procedure 16(a)(1)(G).   The Court Orders the Government to provide the Defendants with a written summary of the expected testimony of its summary witness at least 30 days prior to trial.

9. **Statements of potential unindicted co-conspirators the Government does not intend to call at trial.**

The Government responds that statements of unindicted co-conspirators who will not testify at trial and who did not provide exculpatory, or otherwise discoverable, evidence are not relevant to this matter. The Court agrees. To the extent unindicted co-conspirators made exculpatory statements, the Government must disclose such statements to the Defendants and, to the extent the Government has not done so, the Court Orders the Government to do so within 7 days of the date of this Opinion and Order. Other than as set forth in the preceding sentence, the Government has no obligation to provide statements to the Defendants by unindicted co-conspirators who will not testify at trial.

10. **Disclosure of the following for any alleged or potential informant or unindicted co-conspirator: criminal record, promises of consideration for testifying, plea deals made, and evidence of the informant or unindicted co-conspirator being a target of the investigation, but not charged.**

The Government represents that it has and/or will provide this information as discussed above. Accordingly, the Court denies Shamoun's request without prejudice.

11. **Criminal records of any Government witnesses, discoverable under *Brady* and *Giglio* for impeachment value, as well as prior acts evidence of government witnesses under Fed.R.Evid. 608 and/or 609.**

Shamoun states that the Government has not yet provided such records to the Defendants. The Government represents that it will provide this information pursuant to its obligations under *Brady* and the Jencks Act. Accordingly, the Court denies Shamoun's request without prejudice.

18

12. **Any other *Brady* material including: negative exculpatory witness statements, evidence inconsistent with Government witness testimony, prior inconsistent statements of Government witnesses, prior bad acts or criminal record evidence of Government witnesses, and rewards/promises made to Government witnesses in exchange for testimony or immunity.**

The Government represents that it has and will provide this information pursuant to its obligations under *Brady*.  Accordingly, the Court denies Shamoun's request without prejudice.

13. **Any additional appraisals prepared for any house sales in this case not previously disclosed.**

The Government represents that on October 25, 2013, it provided the Defendants with copies of all the appraisal evidence gathered in its investigation that were in its possession.  Accordingly, the Court denies Shamoun's request without prejudice.

14. **Full bank records and credit card records (not only excerpts) in the possession of the Government for any bank account or credit card account in which Shamoun was a signatory and/or an account holder.**

The Government represents that it provided copies of all the bank records in its possession to the Defendants on October 25, 2013.  Shamoun contends that only partial bank records have been disclosed to him in certain circumstances.  Shamoun specifies the limited documentation provided by the Government with respect to one credit card issued by National City and a second credit card issued by PNC Bank, each of which corresponds to credit card accounts that were open for several years but for which the Government provided only six pages of records per credit card.  Accordingly, to the extent the Government has in its possession any additional bank record and/or credit card

19

records for Shamoun (and for any other Defendant), the Court orders the Government to turn over such records to the Defendants within 7 days of the date of this Opinion and Order.

### 15.  Any information / documents related to payments for remodeling of houses, in particular, accountant / accounting records.

The Government represents that on October 25, 2013, it provided the Defendants with copies of all evidence in its possession relating to the remodeling of the relevant houses in this case.  Shamoun contends that the October 25, 2013, disclosures by the Government did not cover these documents.  Shamoun indicates that those disclosures did reference to a summary of the accounting or books for J.A. Najor Corporation (which was incorporated by Defendant Jeffrey Najor) that lists the houses and how much was paid for the remodeling, and Shamoun requests that the Government provide this summary to him. Accordingly, the Court orders the Government to provide to Shamoun (and the other Defendants), within 7 days of the date of this Opinion and Order: (a) the summary of the accounting or books for J.A. Najor Corporation that lists the houses and how much was paid for the remodeling, and (b) any other evidence it possesses–but has not disclosed–relating to the remodeling of the relevant houses in this case.

### 16.  Any documents that may be in the possession of the Government related to the divorce case of Shamoun (Oakland County Circuit Court No. 2010-772102- DM).

The Government represents that it does not have in its possession any evidence directly related to Shamoun's divorce proceedings.  Accordingly, the Court denies Shamoun's request for such materials is denied, without prejudice.

**17.     High quality copies of the original pictures from the appraisals done on each of the houses listed in the indictment.**

The Government represents that, to the extent it has high quality copies of the relevant houses in its possession, it will provide such copies to the Defendants at least 2 months prior to trial.  Accordingly, Shamoun's request is denied without prejudice.

**18.     Any and all witness interviews (302s) in this case from any interviewee.**

The Government represents that it has provided the Defendants with witness interview memoranda and grand jury transcript material related to currently anticipated trial witnesses.  Accordingly, the Court denies Shamoun's request without prejudice.

**19.     That all discovery previously disclosed (and any going forward) be provided in searchable pdf format.**

Since Shamoun filed this motion, the Government has provided Shamoun (and Hallak, the other Defendant who asked) with all discovery in a searchable pdf format. Accordingly, the Court denies Shamoun's request as moot.

**E.     Motions to Sever Counts 22-24 (Docket #s 97 and 100)**

Shamoun and Jeffrey Najor ask that the Court sever Counts 22, 23 and 24 from the Indictment as misjoined counts and/or sever those Counts from any trial to be held with respect to Counts 1-21.  The factual allegations in Counts 22-24 relate exclusively to Jeffrey Najor and his alleged: (1) aiding or assisting in the filing of false tax returns, and (2) bankruptcy fraud.

Rule 8 of the Federal Rules of Criminal Procedure provides:

> (a)     The indictment or information may charge a defendant in separate counts with 2 or more offenses if the offenses charged – are

of the same or similar character, or based on the same act or transactions, or are connected with or constitute parts of a common scheme or plan.

(b) The indictment or information may charge 2 or more defendants if they are alleged to have participated in the same act or transactions, or in the same series of acts or transactions, constituting an offense or offenses. The defendants may be charged in one or more counts together or separately. All defendants need not be charged in each count.

Shamoun and Jeffrey Najor first argue that Counts 22-24 are misjoined because there is no connection between Shamoun and the alleged crimes of Jeffrey Najor set forth in Counts 22-24. They contend that the tax and bankruptcy fraud counts do not arise out of the "same series of acts or transgressions" alleged in Counts 1-21. The Court is not persuaded. The allegations regarding the manner in which Jeffrey Najor filed false tax returns and committed bankruptcy fraud are directly related to, and his conviction on such charges will be dependent on, the proof of many of the allegations regarding the alleged real estate fraud committed by Jeffrey Najor and the other six Defendants. Therefore, the Court concludes that Counts 22-24 are not misjoined.

Shamoun and Jeffrey Najor also argue that the Court should sever Counts 22-24 from the Indictment and trial due to the prejudice to the Defendants that will result from the spillover effect of the bankruptcy fraud and filing false tax returns counts set forth in Counts 22-24. Shamoun states that if Counts 22-24 were not part of this Indictment at all, evidence regarding the false tax returns and bankruptcy fraud related to Jeffrey Najor would never be admissible against Shamoun. Shamoun argues that admitting evidence related to Counts 22-24 would "portray [Jeffrey] Najor in an even more negative light and

22

necessarily [a]ffect anyone else with whom he is associated.

> Rule 14 of the Federal Rules of Criminal Procedure provides:

> > If the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires.

The Court is not persuaded that any proofs offered by the Government as it relates to Counts 22-24 would unduly prejudice Shamoun–or any other Defendant.  In many conspiracy cases, a co-conspirator may engage in activities that other conspirators have no idea took place, whether such activities are in furtherance of the alleged conspiracy itself or whether such activities might constitute other alleged crimes.  Moreover, the Government will be proving Counts 22-24 against Jeffrey Najor only.  Even if the Government successfully proves any or all of Counts 22-24 against Jeffrey Najor, it does not follow that the jury will associate Jeffrey Najor's guilt on such Counts with Shamoun or any other Defendant.  Significantly, not only do the allegations with respect to Counts 22-24 specifically name only Jeffrey Najor,[3] any jury instructions–and any questions on

---

[3]Defendant Jason Najor notes that Paragraph 127 of the Indictment (in Count 24, which alleges bankruptcy fraud) includes the allegation that Jeffrey Najor "had an unsecured liability of $895,063 payable to Super Fair Cellular, Inc., failing to disclose that the creditor Super Fair Cellular, Inc.'s sole shareholder was Petitioner Jeffrey Najor's brother."  Defendant Jason Najor contends that this allegation is prejudicial to him because it "implies that Defendant Jason Najor was somehow involved in the bankruptcy fraud even though he is not charged in said count[.]"  The Court fails to see how Defendant Jeffrey Najor's report that he had an unsecured liability of almost $900,000 but failing to identify that the unsecured creditor was, in essence, his brother when Defendant Jeffrey Najor was seeking bankruptcy protection is prejudicial to Defendant Jason Najor–as Jason Najor likely would not be getting the full value of that amount if Jeffrey Najor–his brother–succeeded in obtaining bankruptcy protection.  Rather, it is far more likely that Defendant Jason Najor could be seen as a victim of the alleged bankruptcy fraud, not a

the jury verdict form–related to Counts 22-24 will identify only Jeffrey Najor.  For the foregoing reasons, the Court concludes that neither Shamoun nor any of the other Defendants will be prejudiced by Counts 22-24 being part of the Indictment and/or the trial, if there is one.

For the foregoing reasons, the Court denies the motions to sever Counts 22-24 filed by Shamoun and Jeffrey Najor.

**F.     Production of Uncharged Conduct Evidence and Summary Exhibits (Docket #118)**

Hallak asks the Court to order the Government to produce: (1) any evidence relating to unidentified fraudulent conduct the Government intends to introduce, and (2) any summary charts or exhibits.  Hallak notes that the Indictment alleges a loss figure of approximately $10 million due to the conspiracy (Count 1) but only loss amounts of approximately $2.1 million attributable to the fraudulent conduct identified in Counts 2-21 of the Indictment.  Hallak asks that the properties not identified in the Indictment that the Government intends to use as 404(b) evidence be produced immediately so that Defendants can review it in preparation for trial.  The Government has responded that, on October 25, 2013, it provided copies of the bank record and mortgage application evidence (including appraisal evidence) gathered in this investigation and in its possession.  Therefore, the Government contends that it has provided the Defendants with the evidence requested by Hallak.  As neither Hallak nor any of the other Defendants

---

participant in the bankruptcy fraud.

24

contest the Government's response regarding production of evidence related to the conspiracy charge (Count 1), the Court denies the first part of Hallak's motion without prejudice.

After Hallak filed his motion requesting that the Government provide any summary exhibits at least a month before trial, the Government filed its Notice of Intent to Introduce a Summary Exhibit, which contained the summary exhibit and a narrative of the Government witness expected to testify as the summary witness. The Government also represented that, although it did not anticipate using any additional "summary exhibits," it would provide them to the Defendants should the Government decide to use any additional summary exhibits. Neither Hallak nor any of the other Defendants filed a reply or otherwise disputed the Government's representation. Therefore, the Court also denies without prejudice the second part of Hallak's motion.

Accordingly, for the reasons set forth above, Hallak's motion for production of uncharged conduct evidence and for summary exhibits is denied without prejudice.

## G.    Notice of Intent to Introduce a Summary Exhibit (Docket #127)

The Government's Notice indicates that it intends to introduce a summary exhibit that lists 63 real estate transactions and that a summary witness will describe the information summarized on that exhibit. The Government contends that all 63 transactions were coordinated by the Defendants through the use of straw buyers in a similar fashion and that, as such, the summary exhibit represents direct evidence of the conspiracy charged in Count 1 of the Indictment. Shamoun objects to the proposed

exhibit and testimony because only 20 of the 63 transactions are the subject of substantive bank fraud charges (Counts 2-21 of the Indictment).   Shamoun states there is no indication that the Government will offer evidence to show alleged fraud regarding the 43 uncharged transactions and that, as such, those transactions cannot be properly included in the summary exhibit.  The Government has not responded to Shamoun's objection.

Accordingly, the Court Orders the Government to Show Cause, on or before June 19, 2014, why the Court should admit a summary exhibit when it lists 43 transactions for which there is no indication the Government will offer evidence to show alleged bank fraud.  Any or all of the Defendants may file a reply to the Government's response to this Order to Show Cause, provided that such reply(ies) must be filed on or before July 1, 2014.

## IV.  CONCLUSION

Accordingly, for the reasons set forth above, the Court hereby ORDERS that:

(1)     Defendant Jason Najor's Motion to Exclude Suicide Note (Docket #91) is GRANTED;

(2)     Defendant Shamoun's Motion to Dismiss Indictment (Docket #93) is DENIED;

(3)     Defendant Shamoun's Motion to Excluded Alleged Suicide Note (Docket #94) is DENIED WITHOUT PREJUDICE;

(4)     Defendant Shamoun's Motion to Strike Surplusage from the Indictment (Docket #95) is GRANTED;

(5)     Defendant Shamoun's Motion to Compel Pretrial Disclosure of Jencks Act and *Brady* Material, Witness and Exhibit Lists, and for Additional Discovery (Docket #96) is GRANTED IN PART and DENIED IN PART, as set forth above;

26

(6)     Defendant Shamoun's Motion to Sever Counts 22-24 from the Indictment (Docket #97) is DENIED;

(7)     Defendant Jeffrey Najor's Motion to Sever Counts 22, 23 and 24 from Counts 1 to 21 (Docket #100) is DENIED;

(8)     Defendant Suhail Hallak's ("Hallak") Motion for Production of Uncharged Conduct Evidence and for Summary Exhibits (Docket #118) is DENIED WITHOUT PREJUDICE; and

(9)     As to Government's Notice of Intent to Introduce a Summary Exhibit under Federal Rule of Evidence 1006 (Docket #127), the Government shall SHOW CAUSE, on or before June 19, 2014, why the Court should admit a summary exhibit when it lists 43 transactions for which there is no indication the Government will offer evidence to show alleged bank fraud. Further, any or all of the Defendants may file a reply to the Government's response to this Order to Show Cause, provided that such reply(ies) must be filed on or before July 1, 2014.


IT IS SO ORDERED.


                                S/Lawrence P. Zatkoff
                                HON. LAWRENCE P. ZATKOFF
                                UNITED STATES DISTRICT JUDGE

Dated: June 11, 2014

27